UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-1692

MONSTER DADDY, LLC,

Plaintiff - Appellee,

v.

MONSTER CABLE PRODUCTS, INCORPORATED,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Greenville.  Henry M. Herlong, Jr., Senior District Judge.  (6:06-cv-00293-HMH)

Argued:  May 18, 2012                    Decided:  June 19, 2012

Before KEENAN, WYNN, and FLOYD, Circuit Judges.

Affirmed by unpublished opinion.  Judge Keenan wrote the opinion, in which Judge Wynn and Judge Floyd joined.

**ARGUED:** Kirsten Elena Small, NEXSEN PRUET, LLC, Greenville, South Carolina, for Appellant.  Peter Jester Gleekel, WINTHROP & WEINSTINE, PA, Minneapolis, Minnesota, for Appellee.  **ON BRIEF:** Sara Kanos, NEXSEN PRUET, LLC, Greenville, South Carolina; Robert Payne, Scott J. Allen, LARIVIERE, GRUBMAN & PAYNE, LLP, Monterey, California, for Appellant.  Thomas H. Boyd, Bradley J. Walz, WINTHROP & WEINSTINE, PA, Minneapolis, Minnesota, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider a challenge to the district court's award of attorneys' fees to Monster Daddy, LLC (Monster Daddy), based on the court's holding that Monster Cable Products, Inc. (Cable Products) breached a forum selection clause contained in a settlement agreement executed by the parties. Cable Products contends that the district court erred in summarily enforcing the forum selection clause, arguing that disputed factual questions remained regarding another alleged breach of the settlement agreement. Cable Products also argues that the language of the settlement agreement did not support the attorneys' fee award. Upon our review, we affirm the district court's decision awarding attorneys' fees to Monster Daddy, because the forum selection clause was independently enforceable under the terms of the parties' contract and Monster Daddy was a "prevailing party," within the meaning of that contract term.

I.

In 2006, Monster Daddy filed a declaratory judgment action against Cable Products in federal district court in South Carolina, seeking a declaration that Monster Daddy's trademark rights in certain cleaners, waxes, and adhesives did not infringe Cable Products' trademark rights in various electronic

2

cables and their component parts.  In 2007, after the parties entered into a settlement agreement (the settlement agreement), Monster Daddy dismissed its declaratory judgment action.

Two provisions of the settlement agreement are material to our resolution of this appeal.  First, the settlement agreement included a forum selection clause (the forum selection clause), which provided:

> Choice of Law; Jurisdiction.  This Agreement shall be governed by and construed in accordance with the laws of the United States and the State of South Carolina without regard to internal conflict of laws rules. The Parties agree that any claim asserted in any legal proceeding by one party against the other shall be commenced and maintained in the United States District Court for South Carolina or a South Carolina state court of competent jurisdiction.  Any mutually agreed to alternative dispute resolution proceeding shall take place in Greenville, South Carolina.

(Emphasis added.)

Second, the settlement agreement contained a provision allowing an award of attorneys' fees and costs incurred by a prevailing party in enforcement of the agreement (the attorneys' fees clause).  This clause stated:

> Attorney Fees and Costs.  In the event of any breach of this Agreement, the prevailing party shall be entitled to recover not only the amount of any judgment which may be awarded in its favor but also all such other damages, costs and expenses that may be incurred by the party, including but not limited to court costs, reasonable attorneys' fees, and all other reasonable costs and expenses.

3

In 2010, Monster Daddy filed an action against Cable Products in federal district court in South Carolina (the South Carolina action) asserting, among other things, that Cable Products breached the settlement agreement. In its answer, Cable Products alleged that Monster Daddy had committed a prior material breach of the settlement agreement by failing to abide by certain terms in Monster Daddy's trademark applications and that, as a result of that prior breach, Cable Products was no longer bound by the settlement agreement.

After Monster Daddy filed the South Carolina action, Monster Daddy learned that an affiliate of Cable Products was selling certain car cleaners and waxes which, according to Monster Daddy, constituted an intentional infringement of its trademark rights. Monster Daddy accordingly sought leave to amend its complaint in the South Carolina action to include a claim for intentional trademark infringement. Cable Products opposed Monster Daddy's request to amend, and filed an action against Monster Daddy in federal district court in California seeking a declaratory judgment that the sales of the various car cleaners and waxes did not infringe Monster Daddy's trademark rights (the California action).

Monster Daddy thereafter filed in the South Carolina action a motion to amend its complaint to include a claim for intentional trademark infringement, and a motion to dismiss the

4

California action or to enjoin Cable Products from proceeding in that action. The district court in South Carolina granted Monster Daddy's motion to amend, but denied the motion to dismiss the California action citing the court's lack of authority to dispose of a matter pending in another jurisdiction. However, the district court in South Carolina found that Cable Products' tactic in filing the California action was "deceptive," and agreed to consider the imposition of sanctions against Cable Products.

When Cable Products failed to dismiss the California action, Monster Daddy retained counsel to file a motion in that action to transfer Cable Products' claims to the district court in South Carolina. After Monster Daddy filed this motion, Cable Products voluntarily dismissed the California action.

Monster Daddy later filed in the South Carolina action a motion to enforce the settlement agreement, arguing that Cable Products breached the forum selection clause by filing the California action. The district court agreed, and invited Monster Daddy to seek reimbursement of its attorneys' fees incurred as a result of Cable Products' breach of the forum selection clause. Monster Daddy later filed a motion requesting reimbursement of about $9,000 in attorneys' fees. After Cable Products failed to respond to Monster Daddy's motion, the district court awarded Monster Daddy the amount requested.

Cable Products filed a timely notice of appeal from the district court's award of attorneys' fees.

## II.

Cable Products argues that the district court erred in summarily enforcing the settlement agreement, because there was an unresolved factual dispute at the time of the court's decision regarding which party first breached the settlement agreement. Cable Products argues that if a court determines that Monster Daddy committed the first material breach of the settlement agreement, Cable Products would not have been required to perform its obligations under the settlement agreement, including the obligation imposed by the forum selection clause.

Cable Products also challenges the district court's award of attorneys' fees on the grounds that: 1) Monster Daddy was not a "prevailing party" under the terms of the settlement agreement, because Cable Products voluntarily dismissed the California action; and 2) the attorneys' fees incurred in the California action were beyond the scope of the settlement agreement's enforcement provision. We address each argument in turn.

Generally, we review under an abuse of discretion standard a district court's decision to enforce a settlement agreement

6

and to award attorneys' fees. See Bosley v. Mineral Cnty. Comm'n, 650 F.3d 408, 411 (4th Cir. 2011) (attorneys' fees); Hensley v. Alcon Labs., Inc., 277 F.3d 535, 541 (4th Cir. 2002) (enforcement of settlement agreement). However, we review a district court's interpretation of the language of a settlement agreement, like a court's interpretation of other contractual language, de novo. Nehi Bottling Co. v. All-American Bottling Corp., 8 F.3d 157, 162 (4th Cir. 1993).

The parties agree that our interpretation of the settlement agreement is governed by South Carolina law. Under South Carolina law, the issue whether a contract is ambiguous, and the interpretation of an unambiguous contract, are questions of law decided by the court. S.C. Dep't of Natural Res. v. Town of McClellanville, 550 S.E.2d 299, 302-03 (S.C. 2001). The language of a contract is ambiguous when its terms are susceptible to several reasonable interpretations. Id. at 302. In such cases, the court should consider the parties' intent in determining the meaning of the language employed. Davis v. Davis, 641 S.E.2d 446, 452 (S.C. Ct. App. 2006).

When the language of a contract is unambiguous, however, a court's only function is to interpret the contract's lawful meaning and the intent of the parties as expressed in the contract's terms. Miles v. Miles, 711 S.E.2d 880, 883 (S.C. 2011). Thus, when contract language is unambiguous, the plain

7

language of the contract determines its force and effect. McGill v. Moore, 672 S.E.2d 571, 574 (S.C. 2009).

We begin by addressing Cable Products' primary argument, that the district court was precluded from enforcing the forum selection clause of the settlement agreement, given the unresolved dispute regarding whether Monster Daddy committed a prior material breach of the agreement. In effect, Cable Products argues that so long as there remains an unresolved allegation that one party committed a prior material breach of a settlement agreement, the other provisions of that settlement agreement are unenforceable. We disagree with this argument.

By including a forum selection clause in the settlement agreement, the parties implicitly recognized that disputes concerning the agreement could occur at a later date. The forum selection clause manifested the parties' intent regarding the forums where any such future disputes would be resolved. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3d Cir. 1995). Because the forum selection clause was drafted to address the treatment of future alleged breaches, any claim that the clause became unenforceable as a result of such a breach is inconsistent with the very purpose of the clause. See Texas Source Group, Inc. v. CCH, Inc., 967 F. Supp. 234, 237 (S.D. Tex. 1997).

Moreover, if we were to accept Cable Products' argument, parties could readily shirk their contractual obligation to resolve disputes in a particular forum. A mere allegation that the nonmoving party committed a prior material breach of the contract would allow a party to litigate that alleged contractual breach in an unapproved forum until the issue of first breach ultimately was resolved. This ability to undermine the enforcement of forum selection clauses counsels strongly against the adoption of Cable Products' argument. See id.

Additionally, Cable Products' reliance on the prior material breach doctrine is misplaced. This doctrine only excuses a non-breaching party's performance when such obligations were dependent upon the promises that the breaching party failed to perform. See Restatement (Second) of Contracts § 237 cmt. e (1981). Thus, a party's breach of one promise does not discharge the non-breaching party's duties with respect to unrelated or independent promises to perform under the parties' contract. Id.; see also 14 Williston on Contracts § 43:1 (4th ed. 2012).

Here, performance under the forum selection clause was not dependent upon the performance of any other contract provision contained in the settlement agreement. In fact, the unambiguous language of the forum selection clause does not mention any other term, clause, or obligation in the settlement agreement.

9

Thus, adoption of Cable Products' reasoning impermissibly would result in rendering an independent and unambiguous provision in the parties' contract meaningless, in violation of South Carolina law. See Schulmeyer v. State Farm Fire & Cas. Co., 579 S.E.2d 132, 134 (S.C. 2003) (a contract's unambiguous language determines its force and effect); Valley Pub. Serv. Auth. v. Beech Island Rural Cmty. Dist., 462 S.E.2d 296, 299 (S.C. Ct. App. 1995) (each term in a contract "must be considered and given effect if possible"). Accordingly, because the forum selection clause was an independent promise bearing no relationship to the alleged prior material breach, the "first material breach" doctrine was inapplicable as a defense in this case. See 14 Williston on Contracts § 43:1.

We also observe that Cable Products' argument is undermined by its position concerning the applicable law governing the settlement agreement. Under Cable Products' reasoning, the choice of law clause, which is contained in the same paragraph as the forum selection clause, likewise would not be enforceable as a result of the unresolved allegations of prior material breach. Yet Cable Products agrees that South Carolina law governs the interpretation of the settlement agreement, as plainly stated by the choice of law clause. There is no principled basis, however, for distinguishing between the choice of law clause and the forum selection clause contained in the

10

same paragraph of the settlement agreement.  Thus, to permit such a distinction effectively would sanction Cable Products' attempt to pick and choose which portions of the settlement agreement remain enforceable.

Next, we conclude that Cable Products committed a breach of the forum selection clause by filing the California action.  The forum selection clause unambiguously provides that "<u>any claim asserted in any legal proceeding by one party against the other</u> shall be commenced and maintained in the United States District Court for South Carolina or a South Carolina state court of competent jurisdiction."  (Emphasis added.)  In disregard of this provision, Cable Products filed the California action against Monster Daddy.  Because the California action involved a claim that was "commenced and maintained" in a legal proceeding by one party to the settlement agreement, Cable Products, against the other party to that agreement, Monster Daddy, we conclude that Cable Products plainly breached the settlement agreement in this respect.[*]  See <u>McGill</u>, 672 S.E.2d at 574.

---

[*] Cable Products also argued before the district court that it did not breach the settlement agreement because the issues raised in the California action fell outside the scope of the settlement agreement, and because additional parties were named in the California action that were not signatories to the settlement agreement.  However, by failing to present these arguments in its briefs before this Court, Cable Products has waived them.  <u>United States v. Powell</u>, 666 F.3d 180, 185 n.4 (4th Cir. 2011).

11

We now turn to consider Cable Products' contention that the settlement agreement did not support the district court's award of attorneys' fees because Monster Daddy was not a "prevailing party," within the meaning of the attorneys' fees clause. According to Cable Products, its voluntary dismissal of the California action did not affect the legal relationship between the parties because there still was a possibility of future litigation of the merits of those dismissed claims. We disagree with Cable Products' argument.

The award of attorneys' fees incurred by Monster Daddy in the California action was permitted under the plain language of the attorneys' fees clause. See McGill, 672 S.E.2d at 574. That clause provided, in relevant part, that "[i]n the event of any breach of this Agreement, the prevailing party shall be entitled to recover" attorneys' fees. (Emphasis added.) As stated above, Cable Products breached the forum selection clause in the settlement agreement by filing the California action, and the district court based its decision to award attorneys' fees on that ground, finding that Cable Products' "filing of [the California action] was in violation of the settlement agreement." Therefore, Monster Daddy was the "prevailing party" with respect to Cable Products' breach of the forum selection clause of the settlement agreement. See McGill, 672 S.E.2d at 574.

12

Cable Products' argument incorrectly presumes that, to be a "prevailing party," Monster Daddy was required to prevail in the California action on the merits of the claims asserted in that case. However, an award under the attorneys' fees clause may be made whenever a party prevails with respect to a particular breach of the settlement agreement, which in this case was Cable Products' filing of the California action. Thus, to qualify as a "prevailing party" with respect to the breach of the forum selection clause, Monster Daddy did not need to prevail on the merits of the California action.

Finally, we address Cable Products' argument that the district court erred in awarding to Monster Daddy its attorneys' fees incurred in the California action. According to Cable Products, the district court was entitled only to award attorneys' fees incurred in South Carolina in connection with the motion to enforce the settlement agreement. We disagree.

The settlement agreement broadly provides that "[i]n the event of any breach . . . the prevailing party shall be entitled to recover not only the amount of any judgment which may be awarded in its favor but also all such other damages, costs and expenses that may be incurred by the party, including but not limited to court costs, reasonable attorneys' fees, and all other reasonable costs and expenses." (Emphasis added.) We already have held that by filing the California action, Cable

13

Products breached the forum selection clause, and that Monster Daddy was the prevailing party when the district court granted the motion to enforce. Thus, based on Cable Products' breach, Monster Daddy was entitled to recover "all such other damages, costs and expenses [] incurred by" Monster Daddy, which included but were not limited to "reasonable attorneys' fees" under this clause.

To the extent that the attorneys' fees clause required that such costs and expenses relate to the opposing party's breach of the settlement agreement, we conclude that this nexus was satisfied here. The attorneys' fees incurred by Monster Daddy in filing its motion to transfer in the California action, like those incurred in filing its motion to enforce the settlement agreement in the South Carolina action, resulted from Cable Products' breach of the forum selection clause. Moreover, both actions were reasonable measures taken by Monster Daddy to preserve its contractual right to litigate in its chosen forum. Therefore, the district court did not err in including in its attorneys' fee award the time expended by counsel for Monster Daddy in responding to the California action.

14

III.

For these reasons, we affirm the district court's award of attorneys' fees to Monster Daddy.

AFFIRMED