**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Christine Crabtree, Respondent,

v.

Donald Clinton Crabtree, Appellant.

Appellate Case No. 2018-000269

———————

Appeal From Sumter County
George M. McFaddin, Jr., Family Court Judge
Monet S. Pincus, Family Court Judge

———————

Unpublished Opinion No. 2020-UP-310
Submitted October 1, 2020 – Filed November 18, 2020

———————

**AFFIRMED**

———————

Donald Clinton Crabtree, of Lynden, Washington, pro se.

Marian Dawn Nettles, of Nettles Turbeville & Reddeck, of Lake City, and Michael W. Self, of McDougall, Self, Currence & McLeod, LLP, of Sumter, both for Respondent.

———————

**PER CURIAM:** Donald Crabtree (Husband) appeals two orders from the family court: (1) the order denying his motion to reconsider the original divorce decree and

granting Christine Crabtree's (Wife's) motion to reconsider the original divorce decree, and (2) the amended divorce decree. On appeal, Husband argues the family court erred by granting Wife temporary possession of the family home; acting in "contempt of justice" by ignoring law and evidence and lacking integrity in applying the law in this case; acting against the preservation of marriage; showing gender prejudice; incorrectly imputing his income; failing to properly assess marital fault and consider whether the award of alimony should be reversed based on fault grounds; and "subvert[ing] freedom of religion." He further asserts the evidence in this case showed desertion or constructive desertion by Wife; libel and slander by Wife; cruelty by Wife; he is the "most well[-]adjusted mature" and "reasonable parent" for custody purposes; and the guardian ad litem was prejudiced against him and colluded with the family court. Husband further lists several religious questions in his statement of the issues on appeal, including whether religious authority has a place in family life and if extorting a person's religion is "inherently abusive"; whether it is better to claim a religion and not adhere to its teachings; and whether it is better to be at fault or tell someone they are at fault. We affirm.

## I.    FACTS

The parties were married in 2000 in the state of Washington and have four minor children. Due to Husband's schooling and position in the United States Air Force (USAF), the parties moved several times until Husband was stationed in South Carolina in 2012. According to the record, Husband left the USAF in 2014, accepting an incentive package of over $100,000. Husband stated he wished to use this money to start his own business, but Wife, who he claimed initially supported him leaving the USAF and starting his own business, later asked Husband to "take the safer route" and find a new job instead. This disagreement caused problems in the marriage[1]; in particular, Husband asserted Wife no longer had sexual relations with him, and he began sleeping in the guest room. Wife asserted Husband yelled at her, cursed at her, called her names in front of the children, belittled her opinions, told her to submit and obey him, and generally used their Christian religion as a weapon against her.

Husband sent Wife several emails regarding her actions and the religious consequences, telling Wife "because you are in rebellion you will not find comfort in the [L]ord, for he is the one you are rejecting"; "You are not justified, you are incapable of judging what is fair. . . . The spirit of cowardice has no place in my

---

[1] Parties also had issues earlier in their marriage, including physical abuse, and at one point, they separated for fifteen months.

household"; "You are afraid because you are in rebellion against the Lord, the only lasting peace you will find is in obedience"; and "You are simply following in the curse of the woman, trying to unbalance my leadership. Coveting my authority and attacking me. There will be no peace for you in this." Additionally, Husband had an altercation with Wife's father, sending Wife's father an email asking him to leave the parties' marital home and calling the police to "evict" him from the marital home, which the police refused to do as Wife's father was Wife's guest. Afterwards, Husband sent Wife's parents and Wife another email regarding the incident, stating he was "under [God's] authority" and wishing "dreadful anxiety" on those who claimed to be Christian but "rejected [God's] direction in this situation."

In 2015, Husband began to ask Wife to move with him back to Washington, but Wife refused. Wife left Husband on November 9, 2015. Wife filed an action for separate support and maintenance on November 10, 2015, asking for the right to live separate and apart from Husband. Husband filed an answer and counterclaim, requesting separate support and maintenance and the right to live separate and apart from Wife. After a hearing, the family court issued a temporary order that granted Wife sole custody of Children and temporary possession of the marital home; granted Husband restricted and supervised visitation with Children; and ordered Husband to pay child support, the mortgage on the marital home, and Children's private school tuition.[2] Subsequently, Wife filed a rule to show cause against Husband, and after a hearing, the family court issued an order finding Husband in contempt for failing to comply with the temporary order by not paying child support, Children's private school tuition, and other support to Wife. Husband appealed the civil contempt order, and this court affirmed. *Crabtree v. Crabtree*, Op. No. 2017-UP-461 (S.C. Ct. App. filed December 13, 2017). Wife later filed a second rule to show cause against Husband because he had failed to pay the mortgage on the marital home, and after a hearing, the family court found Husband in contempt.

Thereafter, Wife filed an amended complaint asking for a divorce on the ground of one year's continuous separation. Husband amended his answer to also request a divorce but on the ground of abandonment or desertion. After a trial, the family court issued a final divorce decree, granting Wife a divorce based on one year's continuous separation, stating its belief that the leading cause of the divorce was Husband's use of the Christian faith against Wife; finding no fault ground applied to the divorce; imputing an annual income of $80,000 to Husband; granting Wife

---

[2] Husband filed a motion to reconsider this temporary order, which the family court denied. Husband then filed a motion for supersedeas, but this court denied the motion and stayed the appeal of the temporary order pending a final order.

custody of Children and stating Wife may relocate to Washington with Children; ordering the parties to each pay half of the guardian ad litem's fees and costs; ordering Husband to pay all of Wife's attorney's fees and costs; ordering Husband to pay Wife $1,470 in child support and $1,300 in alimony per month; and dividing the parties' marital property 50/50. Both parties filed a motion for reconsideration. The family court denied Husband's motion for reconsideration but granted Wife's motion, and it filed an amended final divorce decree increasing Wife's alimony to $1,600 per month, which resulted in a decrease of Husband's monthly child support obligation from $1,470 to $1,404 per month pursuant to the child support guidelines. Husband appealed to the South Carolina Supreme Court, arguing this case raised the novel issue of "faith based abuse," and the supreme court transferred the case to this court. *Crabtree v. Crabtree*, S.C. Sup. Ct. Order dated February 22, 2018.

## II.   STANDARD OF REVIEW

Generally, on appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). However, appellate courts review the "family court's evidentiary or procedural rulings . . . using an abuse of discretion standard." *Stoney v. Stoney*, 422 S.C. 593, 594 n.2, 813 S.E.2d 486, 486 n.2 (2018).

## III.   DISCUSSION

### A.  Issues Abandoned on Appeal

Husband raises twenty-three issues in his statement of the issues on appeal. For seventeen of these issues, he either fails to argue the issue at all, to provide any supporting legal authority for his conclusory arguments, or to be specific as to what finding, ruling, conduct, or evidence the issue he raises actually pertains to.[3] These

---

[3] Husband does split the issues into appropriately headed sections and make arguments, mostly conclusory, for each issue in his reply brief. *See* Rule 208(b)(1)(E), SCACR ("The brief shall be divided into as many parts as there are issues to be argued. At the head of each part, the particular issue to be addressed shall be set forth in distinctive type, followed by discussion and citations of authority.") However, these arguments are for the most part still unsupported by citation to any legal authority. Additionally, Husband cannot make vague, conclusory arguments on an issue in his final brief and then reserve substantive argument as to that issue until his reply brief. *See Divine v. Robbins*, 385 S.C. 23, 44 n.4, 683 S.E.2d 286, 297 n.4 (Ct. App. 2009) ("The reply brief is not the

issues are whether: (1) the family court demonstrated "contempt for justice" by ignoring statute and manifest evidence; (2) the family court erred by showing gender prejudice; (3) the family court abused its discretion against manifest evidence; (4) the family court acted against the preservation of the marriage; (5) Wife committed libel and slander against Husband; (6) the evidence showed cruelty by Wife[4]; (7) there was evidence to support the income imputed to Husband by the family court[5]; (8) Husband was the "more well[-]adjusted parent" for custody purposes; (9) Husband was the more reasonable parent for custody purposes; (10) the evidence

appropriate vehicle to raise new issues on appeal; thus, we decline to address this argument."); *Bochette v. Bochette*, 300 S.C. 109, 112, 386 S.E.2d 475, 477 (Ct. App. 1989) ("An appellant may not use either oral argument or the reply brief as a vehicle to argue issues not argued in the appellant's brief.").

[4] Husband's final brief does contain some argument with supporting authority regarding cruelty, but it all pertains to his argument Wife did not prove he committed physical cruelty—rather than just emotional and religious cruelty. The only section that potentially pertains to cruelty by Wife against Husband is when Husband alleges Wife "projected her behavior onto" Husband and acted coercively to get her way. Husband has no law to support this statement and at no time alleged physical cruelty by Wife as a potential ground of divorce in either his final brief or his reply brief. Accordingly, we find this issue abandoned on appeal.

[5] Husband failed to argue this issue at all in his final brief, but he argued it extensively in his reply brief and included citations to legal authority. We find this issue was abandoned due to his failure to argue it in his final brief. Nonetheless, on the merits, we find the family court properly imputed $80,000 in income to Husband given (1) he has four minor children to support; (2) his education—he has a bachelor's degree in mechanical engineering, a master's degree in engineering management, and a master's degree in human relations—his skills in software development, his prior employment history, and the fact that he had a job offer paying $80,000; and (3) he chose to be self-employed and start his own business selling software to USAF bases, which made no profit in 2016. *See, e.g.*, *Kelley v. Kelley*, 324 S.C. 481, 489, 477 S.E.2d 727, 731 (Ct. App. 1996) (providing in imputed income cases, courts closely "examine the payor's good-faith and reasonable explanation for the decreased income," and "[e]fforts to frustrate support obligations are not tolerated, *nor are prolonged periods of unemployment generally countenanced*" (emphasis added)); *id.* ("[C]ourts are reluctant to invade a party's freedom to pursue the employment path of their own choosing or impose unreasonable demands upon parties . . . *Nonetheless, even otherwise unreviewable career choices are at times outweighed by countervailing considerations, particularly child support obligations*." (citations omitted) (emphasis added)).

showed the guardian ad litem was biased against him; (11) the evidence showed the family court colluded with the guardian ad litem; (12) the family court acted with integrity in applying the law to the case; (13) the family court acted to subvert freedom of religion; (14) the record shows the family court acted with despotism[6]; (15) religion has a place in family life and whether using religion against a person of that religion is "inherently abusive"; (16) it is more favorable to claim a religion and not adhere to its teachings; and (17) it is better to be at fault or to tell someone they are at fault.  Thus, we find Husband abandoned these issues on appeal.  *See* Rule 208(b)(1)(B), SCACR ("The statement [of the issues on appeal] shall be concise and direct as to each issue, and may be stated in question form.  Broad general statements may be disregarded by the appellate court."); Rule 208(b)(1)(E), SCACR ("The brief shall be divided into as many parts as there are issues to be argued.  At the head of each part, the particular issue to be addressed shall be set forth in distinctive type, *followed by discussion and citations of authority*." (emphasis added)); *First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (considering an issue abandoned because the appellant failed to provide pertinent argument or supporting authority).  Accordingly, we affirm as to these issues.

### B. Husband's "Eviction" from the Marital Home

Husband argues the family court's temporary order should not have "evicted" him from the parties' marital home by granting Wife temporary possession of the parties' marital home based on Wife's allegations of psychological and emotional abuse because the only type of abuse South Carolina recognizes as a ground for divorce is physical abuse.  We disagree.

Initially, we find this issue moot because Husband's eviction from the parties' marital home was part of the temporary order and did not affect his rights at the divorce hearing.  *See Terry v. Terry*, 400 S.C. 453, 456–57, 734 S.E.2d 646, 648 (2012) ("A temporary order of the family court is without prejudice to the rights of the parties.  Such orders are, by definition, temporary—they neither decide any issue with finality nor affect a substantial right . . . .  The family court at the final hearing has

---

[6] Husband's issue on appeal questions whether the family court acted as a despot; however, the argument section of his final brief alleges Wife acted as a despot.  Husband provides no legal authority regarding this particular argument; thus, we find the issue is abandoned on appeal.  *See State v. Lindsey*, 394 S.C. 354, 363, 714 S.E.2d 554, 558 (Ct. App. 2011) (stating an issue is abandoned if the appellant's brief fails to provide legal authority).

the authority to redress any error from the temporary order."). Moreover, in the final divorce decree, the family court granted Wife's request for a 50/50 division of the parties' marital property, which Husband did not dispute. Thus, any ruling by this court regarding Husband's eviction from the marital home pursuant to the temporary ruling will have no practical legal effect in this case.

Nonetheless, on the merits, we find the family court did not err in granting the parties' mutual request to live separately from each other and granting Wife temporary possession of the marital home because it granted her sole custody of Children. *See Jones v. Jones*, 281 S.C. 96, 100, 314 S.E.2d 33, 36 (Ct. App. 1984) (providing a family court does not necessarily have to award exclusive use of the marital home to the custodial spouse in every case, and it must "weigh the cost, inconvenience and other hardships that may be experienced by requiring the custodial spouse to move out of the marital home to the burden imposed upon the non-custodial parent in being unable to realize his equity from a sale or other disposition of the home"; however, the award of custody to the custodial parent "may constitute sufficient reason for granting the custodial spouse exclusive use of the marital home" in some cases). Accordingly, we affirm as to this issue.

### C. Desertion, Constructive Desertion, Marital Fault, and Alimony

Husband argues the family court erred in finding no fault ground for the divorce—while simultaneously noting Husband's use of his Christian faith against Wife caused the demise of the marriage—and in granting Wife alimony when Wife deserted or constructively deserted him.[7] We disagree.

We find the family court did not err in finding no ground for marital fault applied in this case, and thus, the family court was not obligated to consider marital fault when it granted Wife alimony. First, we agree with Wife that the family court did address marital fault in its order because it went through possible reasons for the demise of the marriage—noting Husband's pornography addiction and use of religion against Wife as well as Husband's belief that Wife should not receive alimony due to her failure to live up to her biblical role—and found no ground for marital fault applied. Accordingly, Husband's argument the court failed to address marital fault is meritless.

Second, we find the family court did not err in failing to find Wife deserted Husband because both parties asked for the right to live separate and apart in their respective

---

[7] Husband also argues Wife committed cruelty and libel/slander against him, but as noted above, he abandoned these issues on appeal.

pleadings and were granted that right by the family court in its temporary order. *See Machado v. Machado*, 220 S.C. 90, 101–02, 66 S.E.2d 629, 634 (1951) ("There can be no desertion where the separation of the spouses is upon mutual consent and under a separation agreement, and hence the existence of such an agreement may be advanced as a defense to a suit for divorce on the ground of desertion." (quoting Morland, *Keezer on the Law of Marriage and Divorce*, § 528 (3d ed.))). Because the parties mutually separated, desertion does not apply in this case.

Third, we find the family court did not err in finding Wife did not constructively desert Husband because Wife left Husband. Constructive desertion would only apply if Husband left Wife and argued Wife's conduct forced him to leave and also constituted a fault ground for divorce. *See Mincey v. Mincey*, 224 S.C. 520, 531, 80 S.E.2d 123, 129 (1954) ("In order to constitute constructive desertion, the abandoning party seeking to make a technical deserter out of the one abandoned, must establish misconduct on the part of the other in itself, and independently, amounting to one or more of the recognized permitted grounds for divorce. The conduct complained of must in itself be a sufficient cause for divorce, one or more of the four grounds permitted by the constitutional amendment."). Because Husband did not leave Wife, Husband cannot claim constructive desertion.

Finally, because desertion and constructive desertion are not applicable in this case, we find Husband's argument that Wife should not have been granted alimony due to her alleged marital fault in deserting or constructively deserting him without merit. Accordingly, we affirm as to this issue.

## D. Reversal of the Family Court's Findings and Rulings

Husband argues the family court's findings and rulings should be reversed based on all of the other arguments raised in his appeal. We disagree.

We agree with Wife that Husband did not properly format his brief or provide argument with supporting authority for this particular issue. However, he did provide arguments with supporting law for at least a few of his issues on appeal, and given this issue's reliance on Husband's other issues, we cannot find this issue abandoned. Nonetheless, because we affirm the family court on all of Husband's other issues, we also affirm the family court on this issue.

**AFFIRMED.**[8]

---

[8] We decide this case without oral argument pursuant to Rule 215, SCACR.

**THOMAS, HILL, and HEWITT, JJ., concur.**